The next case, in re Ben Nye Co., Inc., Chris Hoff appearing for appellants, Eve Karasik appearing for appellee debtor. Okay. Mr. Hoff, you want to reserve some time for rebuttal? Yes, Your Honor. I intend to reserve five minutes. Five minutes. Okay. Please go ahead. Good afternoon, and may it please the Court. My name is Chris Hoff, and I represent the appellants, the current claimants. The bankruptcy court below either failed to apply or misapplied controlling Ninth Circuit precedent. Let me ask you a question, first of all. I'm trying to figure out who's who. When you say current claimants, you mean people who have suffered injury and have filed proofs of claim? Yes, Your Honor. My clients are individuals who were used and were exposed to Ben Nye products. And your clients don't include anybody who's filed a claim but hasn't yet suffered injury? No, Your Honor. Those are individuals are referred to in the briefing as potential future claimants, individuals who were exposed to Ben Nye products but who have not yet contracted an asbestos-related disease. Okay. There's a third category in my mind, and that's the people who haven't yet contracted the disease and did not file a proof of claim. Now, that's yet another category in my thinking. I just kind of want to lay that out for you. So, go ahead. Yes, Your Honor. Those are individuals. Yes, absolutely, Your Honor. The bankruptcy court below either failed to apply or misapplied controlling Ninth Circuit precedent. Jensen's fair contemplation test is the law in this circuit, and it is the right rule to determine when a dischargeable claim arises under the bankruptcy code. It is the right rule because it requires that an individual have pre-petition notice and knowledge of a potential claim before it can be discharged. In other words, the fair contemplation... Let me stop you again. I'm sorry, but are you really concerned about which claims get discharged? Your client's claims having been filed having suffered injury, they're going to get discharged, right? Yes, Your Honor. Our concern is that if the potential future claimants, individuals who have been exposed to Ben Nye's products but who have not yet contracted an asbestos-related disease, are included as claimants, if the court, as the court did below, determines that those individuals, folks who have been exposed but are not sick, have claims under 11 U.S.C. 1015, if they have claims, those claims can be discharged and never brought again. And the issue with that is that this is a pot plan. Ben Nye put $50,000 into the pot for all claimants. So if folks who were exposed but are not yet sick are determined to have claims that can be discharged in the bankruptcy, then those individuals are recovering from the same pot of money as my clients. And that is an interest that's protected by due process and fundamentally by the Ninth Circuit's decision in Jensen, which applied the fair contemplation test. But can't that concern about sharing in the pot, couldn't that be addressed by your clients or somebody else with an interest objecting to the claims of these future claimants who have filed proofs of claim? Isn't that come down to the amount that they're going to share into the pot? And isn't the proper way to address that question through claims objections? Well, Your Honor, in the approved amended plan, only the trustee is permitted to object to claims. So we do not have. Counsel, did you object to that provision? I am not sure, Your Honor. I don't know off the top of my head whether we did or not. I was not involved in the bankruptcy court proceedings, and I don't recall whether we objected to that provision. So counsel, a related question is, you know, why shouldn't the panel conclude that you've abandoned all the objections you made in the bankruptcy proceeding? If that you asserted were bases not to confirm the plan, since you haven't included any of them in your current appeal. That's fair. Is that fair for us to conclude that you've, you raised good faith. You raised that the plan is unfair and equitable. You raised that it doesn't comply with 1191B and C. You didn't raise any of those issues on appeal with us. You argued about what the effect of future claimants has on the pot and how that's unfair to them and unfair to your clients, but you didn't make any of the arguments that you made below. Have you abandoned that? Your Honor, this appeal, these appeals, there are two appeals from the bar date order and the confirmation order are, you know, that defines the scope of what's before this court, which is fundamentally whether the bar date order complied with Ninth Circuit precedent and the bankruptcy code, which we believe it did not. I mean, to that point, if they have claims, if they filed them, they can be adjudicated. If they don't have claims, they'll go out and you'll get whatever is fair. I mean, ostensibly, only those allowed claims should be paid. And that doesn't harm your clients if they allow claims get paid because they have a claim. If they don't, then you can object to it. But by the plan, you're telling me only the trustee can. There was no objection to that, but there was no objection to that. I don't know, Your Honor, whether we did object or not. I don't see it as the Judge Gants, but I don't see it in the appellate briefing. Whether we objected to the provision that only the trustee can object. Or that you're challenging that the trustee is the only entity that can object to the claims. Well, fundamentally, Your Honors, we believe that the bar date order ran afoul of Ninth Circuit precedent. Why does that impact you as to the future bar date? Because if they have claims, they have filed them now, and they must have been in fair contemplation because they filed them. And that can be threshed out through the claims process. Well, Your Honor, for one, there's no future rep here, no future claims rep here, so there's no one to assert their rights. And an evaluation of the potential future claimant's due process rights and their rights generally is necessary to determine whether those individuals have dischargeable claims that can be included in this op plan. And none of that has taken place yet. We don't know what's going to happen. There are numerous potential future claimants that have filed proofs of claim, correct? I'm sorry, Your Honor, I didn't hear all of that. Your brief makes it clear that there are numerous potential future claimants, as Judge Ferris has defined it, those who have filed a claim but have not had any injury or illness manifest yet, correct? Correct. All right. Those are the people that can argue about the unfairness. They are not here. Why do you get to, why do the current claimants get to tell us what is unfair for potential future claimants? Because it affects my client's rights, including future claimants in a pot plan directly affects my client's pecuniary recovery. Well, how does that… Go ahead, Judge Ferris. I was going to say that only applies to future claimants who filed proofs of claim, right? Because people who didn't file proofs of claim aren't going to share in the pot. That's correct, Your Honor. How does the treatment of people who didn't file proofs of claim, how does that affect your clients? It does not directly affect them. I believe my clients are directly affected by the potential future claimants who have filed proofs of claim. I believe there's about 200 of them. In Jensen, the Ninth Circuit concluded that the state had sufficient knowledge of the Jensen's potential liability to give rise to a contingent claim for cleanup costs before the Jensen's filed their bankruptcy petition. This is from the Ninth Circuit's decision in the Coolfield case. Counsel, I don't want you to go through the analysis of what fair contemplation is. I think we understand that. The question for me really is the debtors raised the argument that there has been no case in the country ever decided that said that the Jensen fair contemplation test applies in bankruptcy asbestos cases or any asbestos litigation case. Have you been able to identify one where they have said Jensen's rationale applies and precludes either an asbestos claim in state or federal court or in a bankruptcy proceeding? No, Your Honor. I'm not aware of such a case, but I'm also not aware of any cases in the Ninth Circuit since 1993 when Jensen was decided that have interpreted what a claim is under the bankruptcy code that did not follow Jensen. Every single case from the Ninth Circuit itself, from this court, from district courts in the Ninth Circuit, bankruptcy courts in the Ninth Circuit have all uniformly followed Jensen to a wide variety of fact patterns. So if the appellants can obtain a reversal of the order confirming the plan, if we determine that the only method for obtaining a bankruptcy discharge of asbestos liability for unmatured claims that have not manifested any injury as of the petition date, but may have known exposure to the debtors products pre-petition is by complying with Section 524G, does that solve the problem for you? The 524G trust would have certainly addressed the, you know, fundamentally the due process issues that are at play here. And the Ninth Circuit, within the Ninth Circuit, there's never been a decision that allowed the discharge of future claims, you know, absent a 524G trust. You know, Congress enacted 524G in 1994 following the Johns Manville decision. And, you know, they created a mechanism whereby you can discharge future claims without running a follow due process. And we believe that that's something that the debtor could have done here, but chose not to do. So if we were to make such a holding that 524G is the only way that they could discharge what I'm going to call unmatured asbestos claims because they may have known about the exposure but haven't manifested any injuries resulting from that exposure, then wouldn't, would that obviate the need for us to determine that the fair contemplation test is the applicable test in all asbestos-related litigation cases? Yes, Your Honor. All right. So either one of those. Counsel, I want to be clear because I believe your briefing was pretty clear when I read it that you were not challenging that the debtor had to proceed under 524G. Is that correct? That's correct, Your Honor. I just was responding to Judge Gant's question that if the case were decided based on 524G being required, that that would resolve the fair contemplation, what test applies issue. Certainly. I just want to make clear that that is not your point on appeal. Correct, Your Honor. That's right. Unless Your Honors have any further questions at this time, I'd like to reserve the remainder of my time for rebuttal. Very good. Very good.  Ms. Karasik, please go ahead. Good afternoon, Your Honors. May it please the Court, Eve Karasik on behalf of Appellee Ben Niko, Inc. I don't want to repeat what's in my briefs. I do want to highlight for the panel. With that beginning opening, I'm going to take you up on it. Can you explain the relationship between the plan, the bar date order and the confirmation, the injunction that results from that? I think I'm having a little bit trouble understanding it. My understanding of the plan, I mean, the bar date order, is that it precludes anyone who may have used your client's product pre-petition from participating in the bankruptcy if they don't file a proof of claim. And if they do not file a proof of claim, they are forever barred from participating in the bankruptcy, but also from filing any other claim against the debtor? The bar date was set so that the claims, universal claims, could be determined. It was an expansive bar date process. Does it preclude anyone else from ever suing the reorganized debtor, regardless of whenever the injury manifests, if usage of the product was pre-petition? Let me just divert for a second on that. The record shows that no asbestos has ever been proven to be the product. We understand that point. And the reason why that's important is a lot of this is hypothetical. I mean, there is no real injury. Okay, let's entertain us. What happens if somebody who didn't file a proof of claim gets sick from asbestos in 10 years and says they used Ben Nye cosmetics? What happens if they sue? Well, we reserved rights. They have their rights under Bankruptcy Rule 3003C3. They can come to the court and they can say, listen, yeah, they did this wonderful notice. They published. Which notice are we talking about, the bar date notice or the plan confirmation notice? Which one? Either one, both? The bar date notice would allow them to come back into, if they could satisfy 3003C3, they could. My problem with that point is it seems to me you're taking the position that the bar date notice expands the discharge. I mean, the bar date notice sets a deadline to file claims against the estate. But you're saying it has a broader effect that it basically is, it is sort of a discharge. And I don't see how that could be proper. Well, the bankruptcy court found that the 3003C3 opening helped would prevent, you know, protect the rights of those who were allegedly exposed to the product. Now, I mean, we really need to think about this in terms of the facts of this case in the record below. I mean, I know I've just said it. I'm going to say it again. There was no asbestos in this product. I mean, this is not. And I get that your client doesn't want to defend against these claims. We're trying to figure out whether the bankruptcy law permits you, your client, to avoid mounting that defense in the future. I believe it does, Your Honor. I mean, the. Okay, let's get back to where I was headed there. What exactly, which order does that? Is it the bar date order? I think your answer is yes. And my question is, how could that be? How can you have a bar date order that somehow broadens the discharge in bankruptcy? Well, the bar date order allows them to come back in under 3003C3. That's a remedy that's there all the time for creditors to come in and assert a claim. Who want to assert a claim against the estate? Yes. Correct. Correct. But what about creditors whose claims would not otherwise be discharged? Well, you mean under the plan, the plan injunction that. Okay, let's go to the plan injunction then. What in the plan injunction provides for a discharge of these future, let's call them unfiled, unmanifested claims? People who didn't file proofs of claim didn't get sick yet. What are the plan cuts those people off? Well, the courts have found that that's appropriate. They have, I mean, in. Under the discharge, the bankruptcy discharge, the statutory discharge? Correct. I mean, the Energy Futures Holding case, the Grossman's case, and other circuits have found that that discharge can cut that type of liability off. But they're also based on a different standard than the Ninth Circuit's Jensen test, right? They're based on conduct. So that they say that the future energy's case isn't based on the idea that you had to know you had a claim. They just said you had a claim because their debtor disclosed that it did certain work and you were aware that it did certain work. So therefore, you're barred. Jensen test requires that not only do you know you use the product, but that you suffered some manifested itself in some injury beyond the. So it was fair contemplation. That was not what was applied in fair in future energies. Right. Well, Your Honor, the actually the third circuit, the second circuit don't apply the conduct test. The conduct test is if you think of it as a continuous way far on the left. What they what they adopted was the pre petition relationship test, which is set forth in the 11th Circuit opinion in the Piper aircraft case, which basically is. That was rejected by the court in Jensen, right? They said they want to apply the they weren't going to apply the relationship test. They weren't going to apply the conduct test in the fair contemplation test in the context of an environmental claim where they were balancing the issues of the CERCLA statute against the issues in the bankruptcy code. Yes. Since then, courts have applied the fair contemplation test and in various situations where there's a there's a determination as to whether there's a valid claim for purposes of bankruptcy, the bankruptcy code. But each of the none of those cases involve personal injury tort claims, let alone asbestos claim, which is which with the delayed latency problem. And if you look at other kind of environmental claims have a long latency period, plenty of poisons beyond asbestos have long latency periods. It's it's it's a different situation because you don't know what you don't know. And asbestos tort claims, what was the factor that actually caused the harm? You don't know. They could have been exposed to so many other things along the way. It's not unique to asbestos, is it? In an environment, you have a spill and or a release or something. And it's that particular release. It's not necessarily it's not those those types of cases don't involve multiple spills. But people are exposed to other environmental factors that can cause disease. Well, it's like asbestos, right? I mean, I think it's different. I think it is distinct and different that you have a if you look at these environmental cases, you have in the Jensen case, it was a tank of fungicide that was left that hadn't even leaked yet. And then later there was an inspector who came during the corporate case and and said, hey, this might be a problem. You need to get rid of it. Okay. And and so that that that's just different than an asbestos personal injury claim where you're exposed to a product. And then, you know, it takes 30, 40 years for the disease to develop. And then along the way, you may have used other products. So counsel, just to clarify, you are suggesting that the BART, the BART, the BART notice in combination with the plan in combination with the order confirming the plan would preclude not only Mr. Hoff's clients who have claim, it would preclude anybody who filed a proof of claim, but doesn't have a manifested injury yet. And it would preclude anyone who didn't file a proof of claim, but use the product pre-petition, if you could prove that from ever pursuing the reorganized debtor post confirmation. Those who were exposed but haven't manifested prior to the confirmation of the plan would be bound by the BART date order unless they could argue under 3003 C that that apply. And therefore, they have a claim that should have been filed that is discharged in the bankruptcy. Folks that are exposed post confirmation, however, would not be BART. And that's, that's another thing that if you, that what, what the points are really arguing for is a manifestation argument or claims. And again, I do want to point out that, you know, there's been a bit of a slight of hand here and in the trial court. And you can see from the record, the argument was future claimants who aren't their clients, they're really future clients, you know, we're not, we're being, their due process rights were being imperative. Then when they realized that that was going to be problematic, they, you know, that they then switched gears on appeal and said, no, no, no, no, no. What we're really concerned about is our, our clients and the divvying up at the 50,000. I do want to note for the court that claims objections have been filed. The bankruptcy court docket will show that the trustee that the sub five trustee has objected to nearly all of those claims because they were not substantiated by anything other than a, you know, a face page. Here's a claim and it's for 10 million as, as we showed in the demonstration. How are they supposed to be substantiated? This ultimately gets the reality of the situation, right? You told them if you have any chance, any possibility of having a claim, you need to file a claim. They file a claim. Now you object to it, right? So you get it, get it denied. And then 10 years later, as judge Ferris says, this person comes up with, with some horrible injury disease that are, that they believe was attributable to Ben Nye's products, which I understand you are saying that can't happen because there's never been any, any issue. But having adjudic, having filed, adjudicated the claim and been held not to have a valid claim, what happens later if the person does manifest? If, if there had been a declaration or something attached, these are just face pages. My claim, $10 million. And there's nothing attached. If there had been a declaration attached that said, I use this product, I worked at Disney. I was a character in a Disney parade and I use this product and I don't know if I'm going to be sick or not, but I want to reserve my right. I don't believe the trust, the sub five trustee would have been able to object to that claim. He'd have let a $10 million claim stand on that? Well, there's an issue there because the only types of claims the trustee can object to in the bankruptcy court, because of the restriction of 157B, are sort of procedural insufficient evidence types of claims. The other claims have to be brought in the district court, which. In the ordinary asbestos case, where you have a large manufacturer and you have potential claims, future claims, and you have ongoing claims, litigation claims, there's usually the debtor proposes that the future claimants be represented by a separate counsel. And that way you protect the interest of future claimants. They have a seat at the table, they get to participate in the process. That didn't occur in this case. You didn't offer separate counsel for future claimants, right? We did not seek the appointment of a future claims representative, neither did the appellants. But you want the discharge. They don't want the discharge. You're the one that wants to make sure that this plan gets confirmed and the discharge has the effect of precluding all these parties who, now you say, don't get to make arguments on appeal because they don't represent the interest of someone that's completely unrepresented in this case. Who makes those people's arguments then? Well, I mean, this is a subchapter five case also. Who cares? You're getting a complete discharge under Chapter 11 if it's successful. If your confirmation order stands, everybody's precluded. It doesn't matter what section of the code you're using. It's the effect of the discharge that's concerned to the claimant. My point was that this is a small company, a small debtor. There's only so much they could actually afford. I mean, if you brought in yet a futures representative, that would have added more burden, more costs. And already, as the record clearly shows, there was no money under the subchapter five. So why didn't they just liquidate? Why didn't they just liquidate under Chapter seven and walk away from the situation and get the discharge they wanted without the obligation to continue the business and put money up and get the avoidance actions and get the discharge? Why did they go through all that if there isn't anything at stake here? There is going forward if they operate, but under the three years of disposable income, which was $230,000, which was eaten up because of the appellant's continued objection to everything that we did in this case. There's a business here. We didn't want to do Chapter seven and shut it down. That would not have been in the interest of appellants either because they would have gotten zero. But it wouldn't have affected future claimants. Well, they would have gotten zero too, either way. Either way, they'd be discharged. Either way, they get nothing. Can I ask one last question? We've almost run out of your time, but how is the combination of the bar order and the discharges you interpreted different from the injunction you would have gotten if you'd complied with 524G? Putting aside the third-party release part of 524G, which you're not seeking, how is this different from a 524G injunction? Well, a 524G injunction — I mean, 524G permits future claimants that basically — first of all, we couldn't get a 524G because there are — Precisely. That's my point. You're getting a 524 — In part because there's requirements that you have enough evidenced asbestos judgments to show that there's a substantial likelihood that you're going to have substantially more claims that merit a 524G. You could not have met that statutory test because there are none. After 20 years of litigation, starting in 2004, no one ever found asbestos. I certainly understand how you couldn't have sustained a 524G case for a number of reasons. My question is, aren't you getting the same thing as the 524G injunction without satisfying the requirement of that section? We are getting an injunction through a regular Chapter 11, and under 524G, you get an injunction too. But they're both — But you're affecting the definition of claims. It's really the ultimate issue. By virtue of the bar date order, you have expanded what would otherwise under 9th Circuit precedent be defined as the existing claims to include future claims despite 524G. Thank you. Okay. I think we've taken you past your time, so thank you very much for that. Thank you very much. Mr. Hoff, you've got — I'm going to write about three minutes or so. Let's — yeah, three minutes. Okay. Go ahead, please, Mr. Hoff. Thank you, Your Honor. Just a few points. If the court does not apply Jensen here, it creates significant due process issues. The Third Circuit's decisions in Grossman's and Energy Future Holdings support that conclusion. Energy Future Holdings, the court said that it was a cautionary tale for debtors seeking to circumvent Section 524G. And part of that was the increased litigation costs associated with attempting to circumvent 524G. In Grossman's, the 2010 case from the Third Circuit, the court in a footnote actually recites the Jensen fair contemplation test and quotes the 9th Circuit in the Zillow case and says that the 9th Circuit has extended the fair contemplation test to an employment discrimination claim, noting that the test has been applied to a range of non-environmental claims. And with regards to the due process concerns in those Third Circuit decisions, in Grossman's, the court entirely punted on due process and said it was for the district court and bankruptcy court to figure out on a case-by-case basis. And in the Energy Future Holdings case, the court, at the very end of the opinion, feeling compelled to the conclusion that it came to because of the earlier Grossman decision, finds that 3003C3 is sufficient to satisfy due process for unknown future claimants who have not filed claims, which, to my mind, just seems absurd that somehow it could comport with an individual future claimant's due process rights to be able to act 10 years down the line when you get sick, that you can go back to the bankruptcy court in Los Angeles and find a lawyer to file a-  Yes, Your Honor. Counsel. So what we're struggling with, though, is how you have the standing to make that argument on appeal since you don't represent any of those people. How do you get over that argument the debtors made and that we're struggling with? Your Honor, our – my client's rights are directly affected by the inclusion of these individuals. If they're objected to, if they're all objected to and they're all excluded by a claim objection by the Subchapter 5 trustee, if all of those claims are knocked out, then how are you adversely impacted? I'm not sure that we are, Your Honor, but that hasn't taken place. That's not what the factual situation, procedural situation is as we sit here today deciding this case. Let me ask, Counsel, what exactly are you asking for? To vacate the bar date order. What does that mean? I mean, what does that mean? You still have a large number of potential future claimants who have filed proofs of claim. So what does that do? I mean, they've already filed supposedly. They're in fair contemplation. So what does that get you in light of your stated harm that you don't want your distribution to be affected? Well, Your Honor, we think their inclusion as potential claimants who received notice and decided to submit claims was an error. How can it be an error if they filed proofs? You don't get to adjudicate that through objection to the claims bar date or even confirmation. You get to do that through a claims objection. You're not asking us to deny all of the future potential claimants here, are you? That's not before the court, Your Honor. Because it seems like you did. In the conclusion, you asked that they reverse the bar order in order that potential future claimants have no claims and are not barred from pursuing the claims. So I'm having trouble reconciling that. Well, that would be involved if the bar date order is reversed, then those individuals would not have claims that can be discharged in bankruptcy. If futures are not included in the bar date, only current claimants are dealt with in the plan. I think I've taken you over your time. Thank you. Okay, thank you both very much. This is an interesting case. The matter is submitted. Thank you. Thank you.
judges: Faris, Spraker, and Gan